1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MACEO ALLEN, *et al.*,

     Plaintiffs,

v.

MCKENNA PROPERTY
MANAGEMENT, LLC,

     Defendant.

Case No. 2:11-CV-01946-KJD-VCF

**ORDER**

     Presently before the Court is Defendant's Motion to Dismiss (#7).  Plaintiffs filed a response in opposition (#9) to which Defendant replied (#10).

I.  Background

     According to the allegations of the complaint, Plaintiffs Nakeyshaey Allen and Maceo Allen leased property from Defendant McKenna Property Management, LLC ("McKenna") on or about May 18, 2010, because the property was suitable for the care and therapy of their disabled son, Plaintiff Kendrick Allen.  However, Plaintiffs experienced problems with the fitness of the property from the first day of occupancy, June 1, 2010.  Hot water was unavailable in one bathroom of the home and water pressure was a problem throughout the house.  While those problems were

1   eventually resolved, other disputes arose including maintenance of the landscaping and quality and

2   repair of the air conditioning.

3       After McKenna failed to respond to complaints about the air conditioning in July 2010,

4   Plaintiffs paid $85.00 to have the problem resolved. Plaintiffs then withheld the $85.00 from the

5   October 2010 rent.  McKenna then refused to accept any portion of the October rental payment and

6   served Plaintiffs with a five-day notice to quit or pay rent.  Eviction proceedings ensued in Clark

7   County Justice Court at which Plaintiffs prevailed.

8       Finally, on or about, April 25, 2011, Plaintiffs were notified that McKenna would not renew

9   the lease and Plaintiffs would have to completely vacate the property no later than May 31, 2011.

10  Plaintiffs sought to extend the lease on a month-to-month basis.  On May 21, 2011, Plaintiffs

11  tendered a payment for June 2011 to McKenna.  McKenna accepted the payment, but refused to let

12  Plaintiffs stay in the property after May 31st.  McKenna then instituted eviction proceedings.  The

13  justice court ordered Plaintiffs' eviction on June 20, 2011, but stayed the order until June 29, 2011

14  based on Plaintiffs' prior payment of the June rent.

15      Plaintiffs then filed the present action on December 7, 2011 alleging violation of the Fair

16  Housing Act of 1968, breach of contract, breach of the implied covenants of good faith and fair

17  dealing, implied warranty of habitability, quiet use and enjoyment, intentional infliction of emotional

18  distress, unreasonable intrusion upon the seclusion of others, and fraud.  Defendant has now moved

19  to dismiss Plaintiffs' complaint asserting that it is barred by the Rooker-Feldman doctrine.

20  Defendant also seeks to dismiss the state law claims.

21  II.  Standard for a Motion to Dismiss

22      In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as

23  true and construed in a light most favorable to the non-moving party."  Wyler Summit Partnership v.

24  Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).

25  Consequently, there is a strong presumption against dismissing an action for failure to state a claim.

26  See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).

1        "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

2    as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937,

3    1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plausibility, in the

4    context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to

5    draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

6        The Iqbal evaluation illustrates a two prong analysis.  First, the Court identifies "the

7    allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations

8    which are legal conclusions, bare assertions, or merely conclusory.  Id. at 1949-51.  Second, the

9    Court considers the factual allegations "to determine if they plausibly suggest an entitlement to

10   relief."  Id. at 1951.  If the allegations state plausible claims for relief, such claims survive the motion

11   to dismiss.  Id. at 1950.

12   III.  Analysis

13       A.  Rooker-Feldman Doctrine

14        The Rooker-Feldman doctrine is based on the statutory proposition that federal district courts

15   are courts of original, not appellate jurisdiction.  See In re Sasson, 424 F.3d 864, 871 (9th Cir.

16   2005)(citing 28 U.S.C. § 1331, 1332).  Therefore, federal district courts have "no authority to review

17   the final determinations of a state court in judicial proceedings."  Worldwide Church of God v.

18   McNair, 805 F.2d 888, 890 (9th Cir. 1986).  Only the Supreme Court has original jurisdiction to

19   review the final judgments or decrees rendered by the highest state court of a state in which a

20   decision could be had.  See Sasson, 424 F.3d at 871(citing 28 U.S.C. § 1257(a)).

21      The United States Supreme Court has clarified the limit of the Rooker-Feldman doctrine:

22   "The Rooker-Feldman doctrine...is confined to cases of the kind from which the doctrine acquired its

23   name: cases brought by state-court losers complaining of injuries caused by state-court judgments

24   rendered before the district court proceedings commenced and inviting district court review and

25   rejection of those judgments."  Exxon Mobil Corporation v. Saudi Basic Inds. Corp., 125 S.Ct. 1517,

26   1521-22 (2005).  Therefore, three factors must exist in the present action for the Court to find that it

1   lacks subject matter jurisdiction over the claims raised by Plaintiff.  First, the case must be brought

2   by a state-court loser.  Second, the state-court loser must be complaining of injuries caused by state-

3   court judgments rendered before the district court proceedings commenced.  Finally, the complaint

4   must invite review and rejection of the state-court judgments.  Here, none of the factors exist.

5   Particularly, Plaintiffs are not complaining of injuries caused by the state-court judgment.  They are

6   claiming to be injured by Defendant's discrimination and breach of contract, not by the result of the

7   justice court proceedings.  Furthermore, no relief requested of this Court would invite review and

8   rejection of the state-court judgments.  Therefore, the Court declines to extend the <u>Rooker-Feldman</u>

9   doctrine to bar this action.[1]

10          B.  State Law Claims

11          Defendant has moved to dismiss Plaintiffs' claim for fraud.  Rule 9(b) requires a party to state

12   "with particularity the circumstances constituting fraud or mistake."  The purpose of the heightened

13   standard is to provide adequate notice of a defendant's precise misconduct and protect a defendant's

14   reputation. <u>See</u> <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009).  Specifically, "the

15   pleader must state the time, place, and specific content of the false representations." <u>Odom v.</u>

16   <u>Microsoft Corp.</u>, 486 F.3d 541, 553 (9th Cir. 2007)(*quoting* <u>Schreiber Distrib. Co. v. Serv-Well</u>

17   <u>Furniture Co.</u>, 806 F.2d 1393, 1400 (9th Cir. 1986)).  The Court finds that Plaintiffs' complaint

18   provides adequate notice of Defendant's alleged misconduct within the requirements of Rule 9.

19          Similarly, Plaintiffs' complaint for the intentional and negligent infliction of emotional

20   distress is adequately pled.  Further, to the extent that Plaintiff's sixth cause of action for declaratory

21   relief seeks to identify remedies as causes of action, they are dismissed.  However, they may still be

22   available to Plaintiffs as adequately pled remedies if the underlying causes of action are successful.

23          The Supreme Court of Nevada recognizes unreasonable intrusion upon the seclusion of

24   another as one of the four branches of the tort of invasion of privacy.  <u>See</u> <u>People for the Ethical</u>

25   ───────────────

26   [1] In its reply brief, McKenna raised new issues, primarily *res judicata*, not addressed or raised in its motion or Plaintiff's opposition.  The Court will not consider issues raised for the first time in a reply.

1  Treatment of Animals (PETA) v. Berosini, 110 Nev. 78, 867 P.2d 1121, 1130 (1994). To state a

2  claim for the tort of intrusion, a plaintiff must allege the following:  "1) an intentional intrusion

3  (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive

4  to a reasonable person." Id. at 1279.  Not every invasion of a plaintiff's personal space will permit

5  recovery.  "In order to have an interest in seclusion or solitude which the law will protect, a plaintiff

6  must show that he or she had an actual expectation of seclusion or solitude and that that expectation

7  was objectively reasonable." Id.  Here, Plaintiff's allegation that the landlord drove by the property

8  slowly in his car or conducted property inspections in accordance with the lease are not intrusions

9  that rise to the level of a violation of Nevada law.  Accordingly, Plaintiffs' claim for unreasonable

10  intrusion upon the seclusion of others is dismissed.

11  IV.  Conclusion

12      Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (#7) is

13  **GRANTED in part and DENIED in part**;

14      IT IS FURTHER ORDERED that Plaintiff's claim for unreasonable intrusion upon the

15  seclusion of others is **DISMISSED**;

16      IT IS FURTHER ORDERED that all other requests for relief in Defendant's motion are

17  denied.

18      DATED this 22nd day of August 2012.

19

20

21  _____

22  Kent J. Dawson
    United States District Judge

23

24

25

26

5